UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| National Union Fire Insurance Company of Pittsburgh, Pa., | Civil File No.: 20-cv-839 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Cargill, Inc., | |
| Defendant. | |

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") brings this lawsuit for a declaratory judgment against Defendant Cargill, Inc., and states and alleges as follows:

## NATURE OF THE ACTION

1. Pursuant to 28 U.S.C. § 2201, this lawsuit seeks a determination of the parties' rights and obligations under a Commercial Crime Policy National Union issued to Cargill.

## THE PARTIES

2. National Union is a Pennsylvania corporation with its principal place of business in New York, and is licensed to conduct business in this jurisdiction.

3. Upon information and belief, Cargill is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Minnesota.

1027361\305407298.v3

## JURISDICTION AND VENUE

4. This court has jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

5. Venue in this district is proper under 28 U.S.C. § 1391 because, among other things, a substantial part of the risk insured under the contract is situated in this district, Defendant resides in this district, and the insurance policy was issued in this district with required Minnesota amendatory endorsements.

## FACTUAL ALLEGATIONS

6. National Union issued a Commercial Crime Insurance Policy to Cargill, bearing number *xxx*5714, and in effect from October 1, 2014 through June 15, 2016 (the "Policy," attached hereto as Exhibit A).

7. The Policy includes Insuring Agreement 1, entitled "Employee Theft," which provides a $25,000,000 limit of insurance, subject to a $10,000,000 deductible.

8. Subject to the various terms and conditions in the Policy, Insuring Agreement 1, Employee Theft, provides that National Union

> will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

9. Pursuant to Definition 20 in the Policy, "'Theft' means the unlawful taking of property to the deprivation of the Insured."

10. From around 1986 to May 2016, Cargill employed Diane Backis as a "Merchant/Admin Leader" for Cargill's Albany, New York grain facility.

11. On November 28, 2016, Ms. Backis pled guilty to one count of Mail Fraud and one count of filing a false tax return in connection with embezzling $3,115,610.89 from Cargill.

12. Ms. Backis' $3,115,610.89 embezzlement does not exceed the Policy's $10,000,000 deductible, and as such, there is no coverage available.

13. From approximately June 2007 through May 2016, Ms. Backis also communicated to Cargill's corporate headquarters the prices for which she could purportedly sell corn and sorghum in the Albany, New York market.

14. The actual Albany market prices were lower than the prices Ms. Backis communicated to Cargill's corporate headquarters.

15. Cargill alleges it sustained a covered Employee Theft loss when it shipped its corn and sorghum to sell at Albany, New York.

16. Pursuant to the terms and conditions of the Policy, an independent Investigative Specialist was jointly retained to investigate the facts surrounding Cargill's claim.

17. The independent Investigative Specialist determined that Ms. Backis did not collude with any third-party purchaser and did not take any corn or sorghum that Cargill shipped to Albany, New York.

18. The costs Cargill incurred when shipping the corn and sorghum does not constitute "theft," as defined in the Policy, and does not fall within the scope of the Employee Theft Insuring Agreement in the Policy.

19. Cargill did not sustain a loss "resulting directly from 'theft,'" as required in the Policy, when shipping the corn and sorghum.

20. The Investigative Specialist expenses National Union paid pursuant to the Policy reduce the amount of any coverage otherwise available.

21. As additional information is obtained, other coverage defenses may be available as well.

## COUNT I: DECLARATORY JUDGMENT

22. National Union realleges and incorporates by reference the allegations asserted in paragraphs 1-21 above as if fully set forth herein.

23. The Policy is a valid and enforceable contract of insurance between Cargill and National Union.

24. Pursuant to the terms and conditions of the Policy, any coverage available for this matter does not exceed the Policy's $10,000,000 deductible.

25. Pursuant to the terms and conditions of the Policy, the Employee Theft Insuring Agreement does not apply to any costs Cargill may have incurred in shipping its corn and sorghum to Albany, New York.

26. National Union is informed and believes, and thereon alleges, that Cargill contends that the Policy provides Employee Theft coverage for the costs it incurred to sell its corn and sorghum in Albany, New York.

27.   An actual, justiciable controversy exists between the parties.

**WHEREFORE**, National Union requests that this Court enter judgment as follows:

a.   A judicial declaration that there is no Employee Theft coverage in excess of the Policy deductible available for this matter;

b.   For such other relief as the Court deems just, proper, and equitable.


Dated:  March 30, 2020

*s/Joel T. Wiegert*
Joel T. Wiegert (306149)
333 South Seventh Street, Suite 2000
Minneapolis, MN  55402
Telephone:  (612) 333-3434
Facsimile:  (612) 334-8888
Email: jwiegert@hinshawlaw.com

***Attorneys for Plaintiff National Union Fire Insurance Company of Pittsburgh, Pa.***