## FORMS SCHEDULE

Policy Number: 01-613-57-14          Effective  Date: **October 1, 2014**
Division No:  39                     Expiration Date: **October 1, 2015**
Insured Name:  CARGILL INCORPORATED

Print date: **Mar 23, 2015**

Underwriter Name: **Stephen Cox**     Printed by: **Kristin Volante**
Underwriter Phone # : **612-317-5421**   Phone # :

| ALIAS | FORM NUMBER | DESCRIPTION |
|---|---|---|
| ☐ RTQD01 | | RISK TRANSFER |
| ☐ ENVPGE | LETTER | ENVELOPE PAGE |
| ☐ CLETR2 | LETTER | REGULAR BROKER COVER LETTER |
| ☐ COM001 | 91222 | POLICYHOLDER NOTICE |
| ☐ QD5001 | CRDS02 | COMMERCIAL CRIME POLICY DECLARATIONS |
| ☐ QP4907 | CR0022 | Commercial Crime Policy (Discovery Form) |
| ☐ QE4940 | CR0220 | MINNESOTA CHANGES |
| ☐ QE7215 | 99758 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| ☐ QE9423 | 113013 | PROTECTED INFORMATION EXCLUSION |
| ☐ QE9429 | 113024 | INDIRECT OR CONSEQUENTIAL LOSS EXCLUSION |
| ☐ QE9529 | 89644 | ECONOMIC SANCTIONS ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | OMNIBUS NAMED INSURED AND JOINT VENTURE COVERAGE |
| ☐ MNSCPT | MNSCPT | DISCOVERY PERIOD AMENDED |
| ☐ QE2348 | CR2541 | INCLUDE DESIGNATED PERSONS OR CLASSES OF PERSONS AS EMPLOYEES |
| ☐ MNSCPT | MNSCPT | DEFINITION OF EMPLOYEE AMENDATORY ENDORSEMENT |
| ☐ MNSCPT | MNSCPT | ADD CREDIT CARD FORGERY |
| ☐ QE6697 | 95420 | CANCELLATION OF POLICY AMENDED |
| ☐ QE5691 | CR2022 | INCLUDE DESIGNATED PERSON REQUIRED TO HAVE KNOWLEDGE OF LOSS (DISCOVERY FORM) |
| ☐ QE6716 | 95442 | PRIOR THEFT OR DISHONESTY |
| ☐ MNSCPT | MNSCPT | NOTICE CONSOLIDATION-MERGER AMENDED |
| ☐ MNSCPT | MNSCPT | JOINT LOSS AGREEMENT |
| ☐ MNSCPT | MNSCPT | COVERAGE EXCLUSION |
| ☐ QE3503 | CR2009 | AMEND TERRITORIAL LIMITS |
| ☐ QE6707 | 95428 | EMPLOYEE POST TERMINATION COVERAGE |
| ☐ MNSCPT | 86203 | TERRORISM EXCLUSION |
| ☐ QE2284 | CR2510 | INCLUDE VOLUNTEER WORKERS OTHER THAN FUND SOLICITORS AS EMPLOYEES |

*Archive Copy*          EXHIBIT A

**FORMS SCHEDULE**

Policy Number: 01-613-57-14
Division No:     39
Insured Name:   CARGILL INCORPORATED

Effective  Date: October 1, 2014
Expiration Date: October 1, 2015

Print date:  Mar 23, 2015
Printed by: Kristin Volante
Phone # :

Underwriter Name: Stephen Cox
Underwriter Phone # : 612-317-5421

| ALIAS | FORM NUMBER | DESCRIPTION |
|-------|-------------|-------------|
| ☐ MNSCPT MNSCPT | | ADD SECURITIES COVERAGE |
| ☐ QE4971 CR0401 | | CLIENTS' PROPERTY |
| ☐ MNSCPT MNSCPT | | TERMINATION TO ANY EMPLOYEE |
| ☐ QE7459 101036 | | CANCELLATION AMENDATORY (RETURN PRO RATA) |
| ☐ MNSCPT MNSCPT | | FRISC OPTIONAL - |
| ☐ MNSCPT MNSCPT | | TRADING EXCLUSION DELETED |
| ☐ MNSCPT MNSCPT | | NAMED INSURED AMENDED |
| ☐ QE5484 94039 | | STATE AMENDATORY INCONSISTENT |
| ☐ MNSCPT MNSCPT | | ISO 700 COMMERCIAL CRIME POLICY (DISCOVERY FORM) |
| ☐ MNSCPT MNSCPT | | INSURING AGREEMENT FORGERY OR ALTERATION AMENDED |
| ☐ QE2392 78859 | | FORMS INDEX ENDORSEMENT |

NUSFRM

*Archive Copy*

| Account Name: | CARGILL INCORPORATED | | |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| Policy Number: | 01-613-57-14 | Policy Effective Date: | October 1, 2014 |
| Underwriter: | Stephen Cox | Print Date: | Mar 23, 2015 |

| Initial Risk Transfer Assessment Date: | | September 4, 2014 | |
|---|---|---|---|
| Risk Assessment Date | Risk Transfer Qualification | Risk Assessment Date | Risk Transfer Qualification |
| 09/30/2014 | R1 | 10/01/2014 | R1 |
| 10/01/2014 | R1 | 10/24/2014 | R1 |
| 11/05/2014 | R1 | 11/12/2014 | R1 |
| 11/21/2014 | R1 | 02/19/2015 | R1 |
| 02/24/2015 | R1 | 02/24/2015 | R1 |
| 02/24/2015 | R1 | 02/25/2015 | R1 |
| 03/04/2015 | R1 | 03/16/2015 | R1 |
| 03/18/2015 | R1 | 03/18/2015 | R1 |
| 03/20/2015 | R1 | | |

**Risk Transfer Qualification Key:**

**R1** - Insurance Accounting - Safe Harbor applies to transaction, no Risk Transfer Worksheet necessary
**R2** - Insurance Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R3** - Deposit Accounting - Risk Transfer Worksheet completed, approved, and in UW file
**R4** - Bifurcated Accounting (Insurance/Deposit) - Risk Transfer Worksheet completed, approved, and in UW file.
If it has been determined that a Risk Transfer Worksheet needs to be completed, please indicate below the individuals whom are required to sign the worksheet:

_____
Underwriter

_____
Division President

_____
Chief Financial Officer

*Archive Copy*

**National Union Fire Insurance Company of Pittsburgh, Pa.**
100 South
 5th St. Ste. 400
Minneapolis, MN 55402
612- 341- 2333



March 23, 2015

Direct Dial:   612- 317- 5421

AMY KLITZKE
AON RISK SERVICES CENTRAL INC
5600 WEST 83RD STREET
8200 TOWER
MINNEAPOLIS, MN 55437

RE:  **CARGILL INCORPORATED**

Policy Number:   **01- 613- 57- 14**

Dear AMY

Enclosed please find the original and copy(ies) of the policy and/or endorsement(s) for the captioned account.

If you have any questions, please feel free to contact me at the above listed number.

Very truly yours,

Stephen Cox
Branch Manager
Executive Liability
612- 317- 5421

Enc.

7124090

*BRANCH Archive Copy*

**POLICYHOLDER NOTICE**

Thank you for purchasing insurance from a member company of American International Group, Inc. (AIG). The AIG member companies generally pay compensation to brokers and independent agents, and may have paid compensation in connection with your policy. You can review and obtain information about the nature and range of compensation paid by AIG member companies to brokers and independent agents in the United States by visiting our website at www.aig.com/producercompensation or by calling 1-800-706-3102.

*Archive Copy*

**CRIME AND FIDELITY**
**CR DS 02 08 07**
POLICY NUMBER:
*01-613-57-14*
REPLACEMENT OF
POLICY NUMBER:
*01-420-22-94*

**COMMERCIAL CRIME POLICY**
**DECLARATIONS**

In Return For The Payment Of The Premium, And Subject To All The Terms And Conditions Of This Policy, We Agree With You To Provide The Insurance As Stated In This Policy.

**Coverage Is Written:**

[X] **Primary**      [ ] **Excess**      [ ] **Coindemnity**      [ ] **Concurrent**

| | |
|---|---|
| **Company Name Area:** | *National Union Fire Insurance Company of Pittsburgh, Pa.* |
| **Producer Name Area:** | *AON RISK SERVICES CENTRAL INC*<br>*5600 WEST 83RD STREET*<br>*8200 TOWER*<br>*MINNEAPOLIS, MN 55437* |
| **Named Insured:** | *CARGILL INCORPORATED* |
| | *(including any Employee Welfare or Benefit Plans)* |
| **Mailing Address:** | *15407 MCGINTY RD. W.*<br>*WAYZATA, MN 55391* |

| **Policy Period** | |
|---|---|
| **From:** | *October 1, 2014* |
| **To:** | *October 1, 2015*    12:01 A.M. at your mailing address shown above. |

| Insurance Agreements | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1. Employee Theft | *$25,000,000* | *$10,000,000* |
| 2. Forgery Or Alteration | *$25,000,000* | *$10,000,000* |
| 3. Inside The Premises - Theft Of Money And Securities | *$25,000,000* | *$10,000,000* |
| 4. Inside The Premises - Robbery Or Safe Burglary Of Other Property | *$25,000,000* | *$10,000,000* |
| 5. Outside The Premises | *$25,000,000* | *$10,000,000* |
| 6. Computer Fraud | *$25,000,000* | *$10,000,000* |
| 7. Funds Transfer Fraud | *$25,000,000* | *$10,000,000* |
| 8. Money Orders And Counterfeit Money | *$25,000,000* | *$10,000* |

Coverage is provided only if an amount is shown opposite an Insuring Agreement. If the amount is left blank or "Not Covered" is inserted, such Insuring Agreement and any other reference thereto in this policy is deleted.

*7124090*

**BRANCH**
*Archive Copy*

**CRIME AND FIDELITY**
CR DS 02 08 07
POLICY NUMBER:
*01-613-57-14*
REPLACEMENT OF
POLICY NUMBER:
*01-420-22-94*

**COMMERCIAL CRIME POLICY**
**DECLARATIONS**

**If Added By Endorsement:**

| Insuring Agreement | Limit Of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| *Clients' Property* | *$25,000,000* | *$10,000,000* |

**Endorsements Forming Part Of This Policy When Issued:**
*#1,#2,#3,#4,#5,#6,#7,#8,#9,#10,#11,#12,#13,#14,#15,#16,#17,#18,#19,#20,#21,#22, #*
*#23,#24,#25,#26,#27,#28,#29,#30,#31*

**Cancellation Of Prior Insurance Issued By Us:**
By acceptance of this Policy you give us notice cancelling prior policy Nos. *014202294;* the cancellation to be effective at the time this Policy becomes effective.

Premium: *$189,546*

**Countersignature Of Authorized Representative**

**Name:**

**Title:**

**Signature:**

**Date:**

*7124090*

BRANCH
Archive Copy

**COMMERCIAL CRIME POLICY
DECLARATIONS**

**CRIME AND FIDELITY
CR DS 02 08 07**
POLICY NUMBER:
*01-613-57-14*
REPLACEMENT OF
POLICY NUMBER:
*01-420-22-94*

IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its President, Secretary and Authorized Representative. This Policy shall not be valid unless signed below at the time of issuance by an authorized representative of the insurer.

PRESIDENT

SECRETARY

AUTHORIZED REPRESENTATIVE

*7124090*

         © ISO Properties, Inc., 2006

*BRANCH*
*Archive Copy*

# COMMERCIAL CRIME POLICY
## (DISCOVERY FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.j.**:

#### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

#### 2. Forgery Or Alteration

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.**, on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

#### 3. Inside The Premises - Theft Of Money And Securities

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

#### 4. Inside The Premises - Robbery Or Safe Burglary Of Other Property

**a.** We will pay for loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

 **BRANCH** *Archive Copy* © ISO Properties, Inc., 2005

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

**a.** We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

**a.** To a person (other than a "messenger") outside those "premises"; or

**b.** To a place outside those "premises".

**7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1.** This policy does not cover:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

**b. Acts Of Employees Learned Of By You Prior To The Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this policy and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**c. Acts Of Employees, Managers, Directors, Trustees Or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

**(1)** Whether acting alone or in collusion with other persons; or

 **BRANCH** *Archive Copy* © ISO Properties, Inc., 2005 CR 00 22 05 06

**(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

**d. Confidential Information**

Loss resulting from:

**(1)** The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non- public information.

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this policy including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this policy.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

**g. Legal Fees, Costs And Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation, or

radioactive contamination, however caused.

**i. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**j. War And Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudu-

lent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

3. Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not cover:

   **a. Accounting Or Arithmetical Errors Or Omissions**

   Loss resulting from accounting or arithmetical errors or omissions.

   **b. Exchanges Or Purchases**

   Loss resulting from the giving or surrendering of property in any exchange or purchase.

   **c. Fire**

   Loss or damage resulting from fire, however caused, except:

   **(1)** Loss of or damage to "money" and "securities"; and

   **(2)** Loss from damage to a safe or vault.

   **d. Money Operated Devices**

   Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

   **e. Motor Vehicles Or Equipment And Accessories**

   Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

   **f. Transfer Or Surrender Of Property**

   **(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

   **(a)** On the basis of unauthorized instructions;

   **(b)** As a result of a threat to do bodily harm to any person;

   **(c)** As a result of a threat to do damage to any property;

   **(d)** As a result of a threat to introduce a denial of service attack into your computer system;

   **(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

   **(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

   **(g)** As a result of a threat to disseminate, divulge or utilize:

   **(i)** Your confidential information; or

   **(ii)** Weaknesses in the source code within your computer system.

   **(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

   **(a)** Had no knowledge of any threat at the time the conveyance began; or

   **(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

   **g. Vandalism**

   Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

   **h. Voluntary Parting Of Title To Or Possession Of Property**

   Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

4. Insuring Agreement **A.6.** does not cover:

   **a. Credit Card Transactions**

   Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

 **BRANCH** Archive Copy © ISO Properties, Inc., 2005

**b. Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

**5.** Insuring Agreement **A.7.** does not cover:

**COMPUTER FRAUD**

Loss resulting from the use of any computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E. Conditions**

**1. Conditions Applicable To All Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this policy is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this policy. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

**b. Cancellation Of Policy**

**(1)** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**(2)** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(a)** 10 days before the effective date of cancellation

if we cancel for non-payment of premium; or

**(b)** 30 days before the effective date of cancellation if we cancel for any other reason.

**(3)** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**(4)** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**(5)** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**(6)** If notice is mailed, proof of mailing will be sufficient proof of notice.

**c. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**d. Concealment, Misrepresentation Or Fraud**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**(1)** This policy;

**(2)** The property covered under this policy;

**(3)** Your interest in the property covered under this policy; or

**(4)** A claim under this policy.

**e. Consolidation - Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the

 **BRANCH**ive Copy © ISO Properties, Inc., 2005

assets or liabilities of, another entity:

**(1)** You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this policy to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

**(2)** For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this policy shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**f. Cooperation**

You must cooperate with us in all matters pertaining to this policy as stated in its terms and conditions.

**g. Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

**(1)** Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

**(2)** Submit to examination under oath at our request and give us a signed statement of your answers.

**(3)** Produce for our examination all pertinent records.

**(4)** Give us a detailed, sworn proof of loss within 120 days.

**(5)** Cooperate with us in the investigation and settlement of any claim.

**h. Employee Benefit Plans**

**(1)** The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

**(2)** If any Plan is insured jointly with any other entity under this policy, you or the Plan Administrator must select a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this policy, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence", will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**BRANCH** Archive Copy © ISO Properties, Inc., 2005

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**i. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the Policy Period shown in the Declarations and up to 3 years afterward.

**j. Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this policy, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**k. Inspections And Surveys**

**(1)** We have the right to:

**(a)** Make inspections and surveys at any time;

**(b)** Give you reports on the conditions we find; and

**(c)** Recommend changes.

**(2)** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

**(a)** Are safe or healthful; or

**(b)** Comply with laws, regulations, codes or standards.

**(3)** Paragraphs **k.(1)** and **k.(2)** apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**l. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this policy. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this policy, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this policy or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for

loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**m. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this policy;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**n. Liberalization**

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this policy.

**o. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this policy, our obligations are limited as follows:

**(1) Primary Insurance**

When this policy is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this policy, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this policy.

**(2) Excess Insurance**

**(a)** When this policy is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this policy.

**(b)** However, if loss covered under this policy is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**p. Ownership Of Property; Interests Covered**

The property covered under this policy is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this policy is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this policy must be presented by you.

**BRANCH** *Archive Copy* © ISO Properties, Inc., 2005

**q. Policy Bridge - Discovery Replacing Loss Sustained**

(1) If this policy replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate at the time this policy became effective:

(a) We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

(b) However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

(2) The Other Insurance Condition **E.1.o.** does not apply to this Condition.

**r. Premiums**

The first Named Insured shown in the Declarations:

(1) Is responsible for the payment of all premiums; and

(2) Will be the payee for any return premiums we pay.

**s. Records**

You must keep records of all property covered under this policy so we can verify the amount of any loss.

**t. Recoveries**

(1) Any recoveries, whether effected before or after any payment under this policy, whether made by us or you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this policy;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this policy.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

**u. Territory**

This policy covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**v. Transfer Of Your Rights And Duties Under This Policy**

(1) Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

(2) If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**w. Transfer Of Your Rights Of Recovery Against Others To Us**

 **BRANCH** *Archive Copy* © ISO Properties, Inc., 2005

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**x. Valuation - Settlement**

**(1)** The value of any loss for purposes of coverage under this policy shall be determined as follows:

**(a)** Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(i)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**i.** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

**ii.** The Limit of Insurance applicable to the "securities".

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **x.(1)(c)(i)** through **x.(1)(c)(iii)**, we will not pay on a replacement cost basis for any loss or damage:

**i.** Until the lost or damaged property is actually repaired or replaced; and

**ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We will, at your option, settle loss or damage to property other than "money":

**BRANCH** *Archive Copy* © ISO Properties, Inc., 2005

**(a)** In the "money" of the country in which the loss or damage occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(3)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable To Insuring Agreement A.1.**

**a. Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.u.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable To Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.u.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable To Insuring Agreements A.4. And A.5.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.**, we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable To Insuring Agreement A.6.**

**a. Special Limit Of Insurance For Specified Property**

**BRANCH** *Archive Copy* © ISO Properties, Inc., 2005

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.u.** does not apply to Insuring Agreement **A.6.**

## F. Definitions

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

3. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

4. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

   "Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this policy.

5. "Employee":

   **a.** "Employee" means:

   **(1)** Any natural person:

   **(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed

by the "employee";

   **(b)** Who you compensate directly by salary, wages or commissions; and

   **(c)** Who you have the right to direct and control while performing services for you;

   **(2)** Any natural person who is furnished temporarily to you:

   **(a)** To substitute for a permanent "employee" as defined in Paragraph **a.(1)**, who is on leave; or

   **(b)** To meet seasonal or short-term work load conditions;

   while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

   **(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **a.(2)**;

   **(4)** Any natural person who is:

   **(a)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

   **(b)** A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

   **(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

   **(6)** Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person while having care and custody of property

**BRANCH** *Archive Copy* © ISO Properties, Inc., 2005

outside the "premises";

**(7)** Any "employee" of an entity merged or consolidated with you prior to the effective date of this policy; or

**(8)** Any of your "managers", directors or trustees while:

**(a)** Performing acts within the scope of the usual duties of an "employee"; or

**(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**b.** "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **5.a.**

**6.** "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**7.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**8.** "Fraudulent instruction" means:

**a.** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

**b.** A written instruction (other than those described in Insuring Agreement **A.2.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your

knowledge or consent; or

**c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**9.** "Funds" means "money" and "securities".

**10.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**11.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**12.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**13.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**14.** "Occurrence" means:

**a.** Under Insuring Agreement **A.1.**:

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

**b.** Under Insuring Agreement **A.2.**:

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by a person act- ing alone or in collusion with other

 **BRANCH** *Archive Copy* © ISO Properties, Inc., 2005

persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

**c.** Under All Other Insuring Agreements:

**(1)** An individual act or event;

**(2)** The combined total of all separate acts or events whether or not related; or

**(3)** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

**15.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this policy.

**16.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**17.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

**a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

**18.** "Safe burglary" means the unlawful taking of:

**a.** Property from within a locked safe or vault by a person unlawfully entering the safe or

vault as evidenced by marks of forcible entry upon its exterior; or

**b.** A safe or vault from inside the "premises".

**19.** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**20.** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**21.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

**a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**22.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

 **BRANCH** Active Copy © ISO Properties, Inc., 2005   CR 00 22 05 06

ENDORSEMENT# *1*

**CRIME AND FIDELITY
CR 02 20 08 07**

This endorsement, effective *12:01 am*    *October 1, 2014*    forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**MINNESOTA CHANGES**

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME POLICY
KIDNAP/RANSOM AND EXTORTION POLICY

**A.** The **Cancellation Of Policy** Condition is replaced by the following:

**CANCELLATION OF POLICY**

**(1)** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**(2)** We may cancel this policy, subject to the provisions of Paragraph **A.(3)**, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**(3) Policies In Effect**

**(a) Fewer Than 90 Days**

If this policy is a new policy and has been in effect for fewer than 90 days, we may cancel for any reason by giving notice at least:

**(i)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**(ii)** 30 days before the effective date of cancellation, if we cancel for any other reason.

**(b) 90 Days Or More**

If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

**(i)** Nonpayment of premium;

**(ii)** Misrepresentation or fraud made by you or with your knowledge in obtaining the policy or in pursuing a claim under the policy;

**(iii)** An act or omission by you that substantially increases or changes the risk insured;

**(iv)** Refusal by you to eliminate known conditions that increase the potential for loss after notification by us that the condition must be removed;

**(v)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(vi)** Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured. Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the dateof receipt of the notice to appeal the cancellation to the Commissioner of Commerce and that the Commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

*END 001*

**(vii)** A determination by the Commissioner that the continuation of the policy could place us in violation of the Minnesota insurance laws; or

Under Paragraph **A.(3)(b),** we will give notice at least:

**(i)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

**(ii)** 60 days before the effective date, if we cancel for a reason described in Paragraphs **A.(3)(b)(ii)** through **(vii)**. The notice of cancellation will state the reason for cancellation.

**(4)** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**(5)** Proof of mailing of any notice shall be sufficient proof of notice.

**B.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

If we decide not to renew this policy, we will give the first Named Insured and any agent written notice of nonrenewal at least 60 days before the expiration date. Such notice will be mailed or delivered to the first Named Insured and any agent to their last mailing address known to us.

We need not mail or deliver this notice if you have:

**1.** Insured elsewhere;

**2.** Accepted replacement coverage; or

**3.** Agreed not to renew this policy.

Proof of mailing of any notice shall be sufficient proof of notice.

**C.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

This policy is void in any case of:

**1.** Material misrepresentation or omission; or

**2.** Fraud;

by you or with your knowledge in:

**1.** Obtaining this policy; or

**2.** Pursuing a claim under the policy.

**D. Duties In The Event Of Loss**

**1.** In the Commercial Crime Policy and Government Crime Policy, the first sentence of Paragraph **(1)** of the **Duties In The Event Of Loss** Condition is replaced by the following:

Notify us or our agent as soon as possible.

**2.** In the Employee Theft And Forgery Policy, Paragraph **(1)** of the **Duties In The Event Of Loss** Condition is replaced by the following:

**(1)** Notify us or our agent as soon as possible.

**E. Duties In The Event Of An Occurrence**

In the Kidnap/Ransom And Extortion Policy, Paragraph **(4)** of the **Duties In The Event Of An Occurrence** Condition is replaced by the following:

**(4)** Notify us or our agent as soon as possible.

**F.** The **Examination Of Your Books And Records** Condition in the Commercial Crime Policy and Government Crime Policy is replaced by the following:

**EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to one year afterward.

**G.** The **Transfer Of Your Rights Of Recovery Against Others To Us** Condition is amended by the addition of the following:

Our rights do not apply against any person or organization insured under this or any other insurance we issue with respect to the same "occurrence".

**H.** The following applies only to the Commercial Crime Policy and Government Crime Policy.

**END 001**

**BRANCH** **Archive Copy** © ISO Properties, Inc., 2006 CR 02 20 08 07   □

ENDORSEMENT# *1*   (continued)

If the Clients' Property Endorsement **CR 04 01** is attached to this policy, Paragraph **C.1.** of the endorsement is replaced by the following:

1. Paragraph **(1)** of the **Duties In The Event Of Loss** Condition is replaced by the following:

   (1) Notify us or our agent as soon as possible.

I. The following applies only to the Commercial Crime Policy and Government Crime Policy.

   If the Coindemnity Endorsement **CR 20 11** is attached to this policy, Paragraph **3.a.** of the endorsement is replaced by the following:

   a. The:

      (1) Giving of notice of loss to the Controlling Company or its agent; and

      (2) Filing of proof of loss with the Controlling Company;

   will be considered in compliance with the terms of this insurance for the giving of notice of loss and the filing of proof of loss if given and filed in accordance with the terms of this insurance.

J. The following applies only to the Commercial Crime Policy and Government Crime Policy.

   If the Rural Utilities Service Regulations Endorsement **CR 25 28** is attached to this policy:

1. Paragraph **1.** of the endorsement, except for the **NOTICES** Provision, is deleted.

2. We will mail or deliver written notice of cancellation or nonrenewal to the Rural Utilities Service at the same time such notice is mailed or delivered to the first Named Insured.

3. Paragraph **2.a.** of the endorsement is replaced by the following:

   a. Notify us or our agent as soon as possible.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 001*

**ENDORSEMENT# *2***

This endorsement, effective *12:01 am*      *October 1, 2014*      forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE OF CLAIM
(REPORTING BY E-MAIL)**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.    *Email Reporting of Claims*: In addition to the postal address set forth for any Notice of Claim Reporting under this policy, such notice may also be given in writing pursuant to the policy's other terms and conditions to the Insurer by email at the following email address:

   c-claim@AIG.com

   Your email must reference the policy number for this policy. The date of the Insurer's receipt of the emailed notice shall constitute the date of notice.

   In addition to Notice of Claim Reporting via email, notice may also be given to the Insurer by mailing such notice to: AIG, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225 or faxing such notice to (866) 227-1750.

2.    *Definitions*: For this endorsement only, the following definitions shall apply:

   (a)    "Insurer" means the "Insurer," "Underwriter" or "Company" or other name specifically ascribed in this policy as the insurance company or underwriter for this policy.

   (b)    "Notice of Claim Reporting" means "notice of claim/circumstance," "notice of loss" or other reference in the policy designated for reporting of claims, loss or occurrences or situations that may give rise or result in loss under this policy.

   (c)    "Policy" means the policy, bond or other insurance product to which this endorsement is attached.

3.    This endorsement does not apply to any Kidnap & Ransom/Extortion Coverage Section, if any, provided by this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 002*

99758 (8/08)    **BRANCH** *Archive Copy*        Page 1 of 1

**ENDORSEMENT#** *3*

This endorsement, effective at *12:01 am   October 1, 2014*   forms a part of
Policy number  *01-613-57-14*
Issued to: *CARGILL INCORPORATED*

By:   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### PROTECTED INFORMATION EXCLUSION

This endorsement modifies insurance provided under the following:

ISO COMMERCIAL CRIME POLICY
ISO GOVERNMENT CRIME POLICY

In consideration of the premium charged, it is hereby understood and agreed that this policy does not cover loss resulting directly or indirectly from the: (i) "theft," disappearance or destruction of; (ii) unauthorized use or disclosure of; (iii) unauthorized access to; or (iv) failure to protect any:

    (1)  confidential or non-public; or
    (2)  personal or personally identifiable;

information that any person or entity has a duty to protect under any law, rule or regulation, any agreement or any industry guideline or standard.

This exclusion shall not apply to the extent that any unauthorized use or disclosure of a password enables a "theft" by your "employee" of your "money," "securities" or "other property" or that you are holding for a third party; provided, however, this exception shall not apply to the extent that such unauthorized use or disclosure of a password enables a "theft" of or disclosure of information.

### ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 003*

113013 (10/12)      *Archive Copy* *BRANCH*      Page 1 of 1

**ENDORSEMENT#** *4*

This endorsement, effective at *12:01 am   October 1, 2014*      forms a part of
Policy number  *01-613-57-14*
Issued to: *CARGILL INCORPORATED*

By:   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## INDIRECT OR CONSEQUENTIAL LOSS EXCLUSION

This endorsement modifies insurance provided under the following:

ISO COMMERCIAL CRIME POLICY
ISO GOVERNMENT CRIME POLICY

It is agreed that:

1.    Clause D.1.f. Indirect Loss Exclusion is deleted in its entirety and replaced with the following:

      f.    Indirect or Consequential Loss

      Loss that is an indirect or consequential result of an "occurrence", including but not limited to loss resulting from:

      (1)    Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".
      (2)    Payment of damages of any type for which you are legally liable.
      (3)    Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this policy.

**ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.**

 

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 004*

**ENDORSEMENT#** *5*

This endorsement, effective at *12:01 am   October 1, 2014*      forms a part of
Policy No. *01-613-57-14*
Issued to: *CARGILL INCORPORATED*

By: *National Union Fire Insurance Company of Pittsburgh, Pa.*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### ECONOMIC SANCTIONS ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

The Insurer shall not be deemed to provide cover and the Insurer shall not be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose the Insurer, its parent company or its ultimate controlling entity to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union or the United States of America.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

**END 005**

89644 (6/13)          *BRANCH*          Page 1 of 1
          *Archive Copy*

**ENDORSEMENT# *6***

This endorsement, effective *12:01 am*      *October 1, 2014*          forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### OMNIBUS NAMED INSURED AND JOINT VENTURE COVERAGE

This endorsement modifies insurance provided under the following:

### COMMERCIAL CRIME POLICY

1. The Item of the  DECLARATIONS entitled NAMED INSURED is  amended by addition of
   the following:

   and any subsidiary company or corporation  now existing or hereinafter constituted,
   created or acquired by the  Named Insured and in  which the Insured has  a majority
   interest, subject to Clause **E. Conditions, Consolidation - Merger or Acquisition**.

2. If the Named Insured's interest in a Joint Venture is 50% or less, coverage is restricted
   to the Named Insured's interest only unless:

   a. The Insured has the largest ownership of any Joint Venture partner; and
   b. The Insured is contractually obligated to manage and supervise the operation; and
   c. The Insured's policies and procedures are established and adhered to for operation of
      the Joint Venture.

   If all three conditions apply, then the Joint Venture will be covered 100%.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT        *BRANCH*        *END 6*
                    *Archive Copy*

**ENDORSEMENT# 7**

This endorsement, effective *12:01 am*      *October 1, 2014*      forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### DISCOVERY PERIOD AMENDED
### (120 DAYS)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

**PROVISIONS:**

1. In Section E.  Conditions, Clause 1.  Conditions Applicable  to All Insuring  Agreements, paragraph j. Extended Period to  Discover Loss, subparagraph (1) is  hereby deleted and replaced by the following:

    (1) No later than  120 days from  the date of  that cancellation, with  the exception that a one (1) year discovery  period will apply to the Employment  Benefit Plans in accordance  with  ERISA requirements.  However, this extended period to "discover" loss  terminates  immediately upon  the  effective date  of  any other insurance obtained  by  you, whether  from  us or  another insurer, replacing  in whole or in  part the coverage  afforded under this  policy, whether  or not such other insurance provides coverage for loss sustained prior to its effective date.

2. Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, limitations, conditions, or provisions of the attached Policy other than the above stated.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT      *BRANCH           END 7*
            *Archive Copy*

**ENDORSEMENT#** *8*

**CRIME AND FIDELITY**
**CR 25 41 08 07**

This endorsement, effective *12:01 am*      *October 1, 2014*      forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**INCLUDE DESIGNATED PERSONS OR CLASSES**
**OF PERSONS AS EMPLOYEES**

This endorsement modifies insurance provided under the following:

> COMMERCIAL CRIME COVERAGE FORM
> COMMERCIAL CRIME POLICY
> EMPLOYEE THEFT AND FORGERY POLICY
> GOVERNMENT CRIME COVERAGE FORM
> GOVERNMENT CRIME POLICY

and applies to the Employee Theft Insuring Agreement:

**SCHEDULE**

| Persons Or Classes Of Persons |
| --- |
| *Employess on Military Leave of Absence* |
| |
| |
| |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The definition of "employee" is amended to
include any natural person or group of
persons named or described in the Schedule.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 008*

ENDORSEMENT# 9

This endorsement, effective *12:01 am*    *October 1, 2014*    forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DEFINITION OF EMPLOYEE AMENDATORY ENDORSEMENT
(CONSULTANTS, MESSENGERS, AND NON-COMPENSATED OFFICERS ADDED)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

**PROVISIONS:**

1.    Section F.  Definitions, paragraph  5. "Employee", subparagraph a. is amended by adding the following to the end thereof:

"Employee" shall also include the following:

(9)    Messenger -   any person who  is duly authorized  by the Insured to  have the care and custody of property outside the premises.

(10)    Non-Compensated Officer -  any officer  of the Insured and any successor  of such officer.

(11)    Consultant, but only while,

(a) a consultancy agreement is in effect between the Insured and such Consultant or  between the Insured and such Consultant's company or firm;

(b) such Consultant is performing acts within  the scope of such consultancy agreement; and

(c) such  Consultant is  under the supervision, direction and control of the Insured.

For purposes  of this endorsement,  "Consultant" means  a professional  consultant under contract, either directly  or through such Consultant's  company of firm,  with the Insured to provide solely consulting  services to the Insured.  "Consultant"  does not include any individual or entity providing services to the Insured pursuant to any contract, whether  verbal, written,  express  or implied,  to  provide services  to  the Insured, in whole or in part, other than consulting services.

2.    Nothing herein contained  shall be held  to vary, alter, waive, or  extend any of  the terms, limitations,  conditions,  or  provisions of the attached Policy other  than the above stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT    *BRANCH*    *END 9*
    *Archive Copy*

**ENDORSEMENT# 10**

This endorsement, effective *12:01 am    October 1, 2014*       forms a part of
policy number *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ADD CREDIT CARD FORGERY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

and applies to the Forgery or Alteration Insuring Agreement:

A. Schedule

| Limit of Insurance | Deductible Amount Per Occurrence | Covered Instruments |
|---|---|---|
| $10,000,000 | $10,000 | (X) Includes |
|  |  | ( )  Limited To |

*Information required to  complete this Schedule,  if not  shown on this  endorsement,
will be shown in the Declarations.

B. **Provisions**

1. Covered Instruments  either   includes  or  is   limited to,  whichever  is  indicated as
   applicable in  the Schedule,  any written  instruments required  in conjunction  with any
   credit card issued  to you  or any  "employee" or  to your  spouse or  any child  residing
   permanently in your residence.

2. The most we will  pay in any one  "occurrence" is the  Limit of Insurance shown  in the
   Schedule.

   We will  pay the  amount of  loss in  any  one "occurrence"  which is  in excess  of the
   Deductible Amount  shown  in the Schedule  up  to the Limit  of  Insurance as stated
   above.

3. The following exclusion is added to Section D.:

   The Forgery or Alteration Insuring Agreement does not apply to:

ENDORSEMENT# *10*   (Continued)

This endorsement, effective *12:01 am    October 1, 2014*     forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NON-COMPLIANCE WITH CREDIT CARD ISSUER'S REQUIREMENTS**

Loss arising from any credit charge card if you have not complied fully with the
provisions, conditions or other terms under which the card was issued.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT      *BRANCH        END 10*
                    *Archive Copy*

ENDORSEMENT# *11*

This endorsement, effective *12:01 am      October 1, 2014*      forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CANCELLATION OF POLICY AMENDED

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**
**GOVERNMENT CRIME POLICY**

**E. Conditions, Conditions Applicable To All Insuring Agreements, Cancellation Of Policy** (2)(b) is deleted in its entirety and replaced with the following:

(b)    *90* days before the effective date of cancellation if we cancel for any other reason.

Nothing herein stated shall be held to alter, vary, waive or extend any of the terms, conditions, provisions, agreements or limitations of the policy, other than as stated herein.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 011*

95420 (8/07)   *BRANCH Archive Copy*          Page 1 of 1

ENDORSEMENT# *12*

**CRIME AND FIDELITY
CR 20 22 08 07**

This endorsement, effective *12:01 am*    *October 1, 2014*    forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INCLUDE DESIGNATED PERSON REQUIRED
TO HAVE KNOWLEDGE OF LOSS
(DISCOVERY FORM)**

This endorsement modifies insurance provided under the Discovery Form version of the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY
GOVERNMENT CRIME COVERAGE FORM
GOVERNMENT CRIME POLICY

**SCHEDULE**

| |
|---|
| **Position Of Designated Person(s):**<br>*The Minneapolis Insurance Department* |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

1. The Introductory Paragraph to Section **A. Insuring Agreements** is replaced by the following:

   Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by a "designated person" during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition.

2. The introductory paragraph of the **Duties In The Event Of Loss** Condition is replaced by the following:

   After a "designated person" "discovers" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

3. Under the Commercial Crime Coverage Form, Commercial Crime Policy and the Employee Theft And Forgery Policy, the **Extended Period To Discover Loss** Condition is replaced by the following:

   We will pay for loss that you sustained prior to the effective date of cancellation of this coverage form/policy which is "discovered" by a "designated person":

   a. No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this coverage form/policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

   b. No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**END 012**

**ENDORSEMENT#** *12*   (continued)

4. Under the Government Crime Coverage Form and Government Crime Policy, the **Extended Period To Discover Loss** Condition is replaced by the following:

We will pay for loss that you sustained prior to the effective date of cancellation of this coverage form/policy, which is "discovered" by a "designated person" no later than 60 days from the date of that cancellation.

However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this coverage form/policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

5. Paragraph **(2)** of the **Joint Insured** Condition is replaced by the following:

   **(2)** Knowledge possessed or "discovery" made by a "designated person" of any Insured shall constitute knowledge or "discovery" by all Insureds for all purposes of this coverage form/policy.

6. Under the Commercial Crime Coverage Form, Commercial Crime Policy and the Employee Theft And Forgery Policy, Paragraph **(4)** of the **Joint Insured** Condition is replaced by the following:

   **(4)** If this coverage form/policy or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by a "designated person":

   **(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this coverage form/policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

   **(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

7. Under the Government Crime Coverage Form and Government Crime Policy, Paragraph **(4)** of the **Joint Insured** Condition is replaced by the following:

   **(4)** If this coverage form/policy or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by a "designated person" no later than 60 days from the date of that cancellation.

   However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this coverage form/policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

8. Paragraph **(1)** of the **Termination As To Any Employee** Condition is replaced by the following:

   **(1)** As soon as a "designated person" not in collusion with such "employee" learns of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

9. In Section **F.** Definitions:

   **a.** The definition of "discover" or "discovered" is replaced by the following:

   "Discovery", "discover" or "discovered" means the time when a "designated person" first becomes aware of facts which would cause a reasonable person to assume that a loss of a type covered by this coverage form/policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

   "Discovery", "discover" or "discovered" also means the time when a "designated person" first receives notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances, which, if true, would constitute a loss under this coverage form/policy.

**END 012**

BRANCHive Copy © ISO Properties, Inc., 2006      CR 20 22 08 07

**ENDORSEMENT#** *12*   (continued)

**b.** The following definition is added:

"Designated person" means:

**(1)** Any insurance risk manager;

**(2)** An "employee" in your Human Resources Department or its equivalent;

**(3)** Any director, trustee, partner, "member" or "manager";

**(4)** Any elected, appointed or otherwise titled officer;

**(5)** The highest ranking "employee" at the "premises" where such "employee" performs the majority of his or her duties; or

**(6)** Any person in a position shown in the Schedule;

of any Insured.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

*END 012*

**BRANCH** Archive Copy © ISO Properties, Inc., 2006

**ENDORSEMENT#** *13*

This endorsement, effective *12:01 am*     *October 1, 2014*          forms a part of
policy number  *01-613-57-14*
issued to *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**PRIOR THEFT OR DISHONESTY**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**
**GOVERNMENT CRIME POLICY**

**A.    Schedule\***

| Prior Theft or Dishonesty Amount: | *$25,000* |
|---|---|
| \*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. | |

**B.    E. Conditions** is modified as follows:

The paragraph entitled **Termination As To Any Employee** is deleted in its entirety from:

-      **Conditions Applicable to Insuring Agreement A.1.**
       (with respect to the Commercial Crime Policy)

-      **Conditions Applicable to Insuring Agreement A.1. And A.2.**
       (with respect to the Government Crime Policy)

and replaced with the following:

**Termination As To Any Employee**

(1)    This Insuring Agreement is cancelled as to any "employee" immediately upon discovery by:
       (a)    You; or
       (b)    (with respect to the Commercial Crime Policy) Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";
              (with respect to the Government Crime Policy) Any of your officials or employees authorized to manage, govern or control your "employees" not in collusion with the "employee"
       of "theft" or any other dishonest act committed by the "employee"
              ▪    after becoming employed by you; or
              ▪    prior to becoming employed by you, provided that such conduct involved Loss of Money, Securities or other property valued at the amount specified in the schedule above or more.

(2)    The Insuring Agreement terminates as to any "employee" on the date specified in a notice mailed to the first Named Insured. The date will be at least 30 days after the date of mailing. We will mail or deliver our notice to the first named

© All rights reserved.
*END 013*

*Archive Copy*

**ENDORSEMENT#** *13*    (continued)

Insured's last mailing address known to us. If notice is mailed proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 013*

95442 (8/07)    ***BRANCH***    *Archive Copy*    Page 2 of 2

ENDORSEMENT# *14*

This endorsement, effective *12:01 am    October 1, 2014*    forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NOTICE CONSOLIDATION- MERGER AMENDED**
**(25% THRESHOLD; 90 DAYS)**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

**PROVISIONS:**

1. Section **E. Conditions** 1. **Conditions Applicable To All Insuring Agreements**, **e.
ConsolidationMerger Or Acquisition** is deleted in its entirety and replaced with the
following:

> **e. Consolidation - Merger or Acquisition**
> If, through consolidation or merger with, or purchase of assets of some other
> concern, any persons shall become "Employees" or if you acquire the use
> and control of any additional premises, the insurance afforded by this policy
> shall also apply as respects such "Employees" and premises, provided that if
> the total assets of the new entity are more than 25% of your total assets,
> you must give us written notice within ninety (90) days and pay us an
> additional premium computed pro rata from the date of such consolidation,
> merger or purchase to the end of the current premium period.

2. Nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
conditions, limitations or provisions of the attached policy other than as above stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT    *BRANCH        END 14*
*Archive Copy*

**ENDORSEMENT# 15**

This endorsement, effective   *12:01 am       October 1, 2014*            forms a part of
policy number   *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**JOINT LOSS AGREEMENT**

In consideration for the premium charged on this policy, it is hereby understood and agreed:

In the event the Insured suffers a loss insured both by the Insured's All Risk property policy issued by another insurer, and there is a disagreement between the two insurers with respect to:

    A. whether the loss is insured under this Policy or under the All Risk property policy; or
    B. the extent of participation of this Policy and All Risk property policy;

then, after agreement among the Insured and the Companies involved as indicated above as to the total amount of the loss recoverable under all involved policies, this Company will, upon written request of the Insured, pay to the Insured, in addition to that portion of the total recoverable loss for which the Company admits liability: one half (1/2) of that portion of the total recoverable loss that is in disagreement under A. and/or B. above (but in no event more than the minimum amount remaining payable under any involved coverage after making provisions for undisputed payments) provided that the other involved insurer shall simultaneously pay to the Insured the remaining one-half (1/2) of that portion of the total recoverable loss which is in disagreement under A. and/or B. above.

Such payment by this Company and the acceptance of the same by the Insured signifies the agreement of this Company to submit to proceed with binding arbitration within Ninety (90) days of such payment in order to settle questions in dispute and/or to apportion the amount of the total recoverable loss that is in disagreement under A. and/or B. above. One (1) arbitrator shall be appointed for each insurer involved one (1) additional arbitrator shall be appointed by consent of the other arbitrators appointed. The decision by the arbitrators shall be binding on all parties involved.

The Insured agrees to cooperate in furnishing information as may be requested by this Company in Connection with such arbitration or any other method of apportionment upon which the Companies may decide, but not to intervene therein.

*BRANCH  Archive Copy* *END 15*

**ENDORSEMENT#** *15*   **(Continued)**

This endorsement, effective   *12:01 am*      *October 1, 2014*      forms a part of
policy number   *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

Except as otherwise expressly provided herein, this clause does not modify or waive any of
the terms and conditions  of this   Policy or affect  in any way  the rights of  the Insured or
this Company thereunder .  Nor shall this Endorsement  apply if the Company  has paid the
Policy's applicable limit of liability.

Nothing herein contained  shall be  held to vary,  alter, waive  or extend  any of the  terms,
conditions, provisions, agreements  or limitations  of the above  mentioned Bond  or Policy,
other than as above stated.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT    *BRANCH*          *END 15*
          *Archive Copy*

**ENDORSEMENT#** *16*

This endorsement, effective *12:01 am    October 1, 2014*    forms a part of
policy number *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**COVERAGE EXCLUSION**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

   **COMMERCIAL CRIME POLICY**

**PROVISIONS**

It is agreed that:

1.  Coverage is **excluded** under this policy for:

   **THE MOSAIC COMPANY**

All other terms, agreements, conditions, limitations of this policy to which this
endorsement is attached remain unchanged except as herein expressly modified.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
                           AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT        *BRANCH        END 16*
             *Archive Copy*

**ENDORSEMENT#** *17*

**CRIME AND FIDELITY**
**CR 20 09 08 07**

This endorsement, effective *12:01 am*     *October 1, 2014*     forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**AMEND TERRITORIAL LIMITS**

This endorsement modifies insurance provided under the following:

      COMMERCIAL CRIME COVERAGE FORM
      COMMERCIAL CRIME POLICY
      EMPLOYEE THEFT AND FORGERY POLICY
      GOVERNMENT CRIME COVERAGE FORM
      GOVERNMENT CRIME POLICY

**SCHEDULE**

| Territory | |
|---|---|
| **Add** | **Delete** |
| *Worldwide* | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The Territory Condition is amended by adding or deleting the territory shown in the Schedule.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
              AUTHORIZED REPRESENTATIVE

*END 017*

ENDORSEMENT# *18*

This endorsement, effective *12:01 am      October 1, 2014*          forms a part of
policy number  *01-613-57-14*
issued to *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**EMPLOYEE POST TERMINATION COVERAGE**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**
**GOVERNMENT CRIME POLICY**

**PROVISIONS:**

1.   Section **F. Definitions**, "Employee", subsection a.(1)(a) is hereby deleted in its entirety and replaced with the following:

a.    "Employee" means:

(1)    Any natural person:

(a)    While in your service and for the first *90* days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

2.   Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, limitations, conditions, or provisions of the attached Policy other than the above stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 018*

95428 (8/07)  *BRANCH Archive Copy*         Page 1 of 1

<u>ENDORSEMENT# *19*</u>

This endorsement, effective *12:01 am*    *October 1, 2014*    forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**TERRORISM EXCLUSION**

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of, in connection with, or relating to "terrorism" including but not limited to:

1. Any action taken in hindering or defending against an actual or expected incident of "terrorism" regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage; and
2. Any contemporaneous or ensuing loss caused by explosion, fire, heat, vandalism, looting, theft, civil commotion, rebellion or insurrection.

However, this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

1. The total of damages and/or loss to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include the replacement cost, without deduction for depreciation, for all damage sustained by any property affected by the "terrorism" and business interruption losses sustained by owners or occupants of damaged property; or
2. Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:
   a. Physical injury that involves a substantial risk of death; or
   b. Protracted and obvious physical disfigurement; or
   c. Protracted loss of or impairment of the function of any bodily member or organ; or
3. The "terrorism" involves the actual, alleged or threatened use, release, escape, dispersal, application and or existence of:
   a. Any nuclear reaction;
   b. Radioactive materials or "nuclear materials" in any form and from any source;
   c. Radionuclides;
   d. Radiation emitted from any radioactive source whether natural or manmade; and/or
   e. Electromagnetic pulses; or
4. The "terrorism" involves the actual, alleged or threatened use, release, escape, dispersal and/or application of pathogenic or poisonous chemical or "biological" materials, whether natural, manmade, living or dead.

86203 (07/04)   *BRANCH* Archive Copy *END 19*

ENDORSEMENT# *19*   (Continued)

This endorsement, effective *12:01 am*     *October 1, 2014*     forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

Multiple incidents of "terrorism" that occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership will be considered to be one incident.

DEFINITIONS - The following definitions shall apply:

1. "Terrorism" means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in any connection with any organization, government, power, authority or military force, when the effect is to intimidate, coerce or harm:

   a. A government;
   b. The civilian population of a country, state or community; or
   c. To disrupt the economy of a country, state or community.

2. "Nuclear materials" means "source material," "special nuclear material" or "by-product material."  "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

3. "Biological" materials includes all microorganisms, viruses, rickettsia, prions, nucleic acids, toxins, toxin-producing agents, and poisons produced by biological organisms.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

© All rights reserved.

86203 (07/04)   **BRANCH**         **END 19**
              *Archive Copy*

**ENDORSEMENT#** *20*

**CRIME AND FIDELITY**
**CR 25 10 08 07**

This endorsement, effective *12:01 am*   *October 1, 2014*   forms a part of
policy number  *01-613-57-14*
issued to *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**INCLUDE VOLUNTEER WORKERS OTHER**
**THAN FUND SOLICITORS AS EMPLOYEES**

This endorsement modifies insurance provided under the following:

    COMMERCIAL CRIME COVERAGE FORM
    COMMERCIAL CRIME POLICY
    EMPLOYEE THEFT AND FORGERY POLICY
    GOVERNMENT CRIME COVERAGE FORM
    GOVERNMENT CRIME POLICY

The definition of "employee" is amended to include any non-compensated natural person other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee".

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*END 020*

ENDORSEMENT# *21*

This endorsement, effective *12:01 am*     *October 1, 2014*     forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

## ADD SECURITIES COVERAGE

This endorsement modifies insurance provided under the following:

### COMMERCIAL CRIME POLICY

It is agreed that:

1.     The Policy is  amended to  include the following  Insuring Agreement  designated as
follows:

### A.9. Securities Coverage

Loss sustained by  you which  is "discovered" by  you during  the Policy  Period and
the loss is resulting directly from you having, in good faith, for your own account  or
for the account of others:

(1) acquired, sold  or delivered, or given value,  extended credit or assumed liability,
on the faith of, any original:

(A) Certificated Security,
(B) Document of Title,
(C) Deed, mortgage  or other  instrument conveying  title to,  or creating  or
discharging a lien on, real property,
(D) Certificate of Origin or Title,
(E) Evidence of Debt,
(F) Corporate, partnership or personal "guarantee,"
(G) Security Agreement,
(H) Instruction to a Federal Reserve Bank of the United States, or
(I) Statement of  Uncertificated Security  of any  Federal Reserve Bank  of the
United States which
(i)     bears  a signature  of any  maker,  drawer, issuer,  endorser, assignor,
lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any
person signing in any capacity which is a "forgery," or
(ii)   is altered, or
(iii)   is lost or stolen;

**ENDORSEMENT#** *21*   **(Continued)**

This endorsement, effective *12:01 am*   *October 1, 2014*   forms a part of
policy number   *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

(2) guaranteed in writing or witnessed any signature upon any transfer, assignment, bill of sale, power of attorney, "guarantee," endorsement or any items listed in (A) through (H) above;

(3) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of any item listed in (A) through (D) above which is a "counterfeit."

Actual physical possession of the items listed in (A) through (I) above by you, your correspondent bank or other authorized representative, is a condition precedent to you having relied on the faith of such items.

A mechanically reproduced facsimile signature is treated the same as a handwritten signature.

2.   Section F. Definitions, is hereby amended to include the following definitions with respect to **A.9. Securities Coverage**:

"Certificate of Origin" or "Title" means a document issued by a manufacturer of personal property or a governmental agency evidencing the ownership of the personal property and by which ownership is transferred.

"Certificated Security" means a share, participation or other interest in property of, or an enterprise of, the issuer or an obligation of the issuer, which is:

(i)   represented by an instrument issued in bearer or registered form; of a type commonly dealt in on securities exchanges or markets or

(ii)   commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(i)   either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations.

"Counterfeit" means imitation which is intended to deceive and to be taken as an original.

**BRANCH** Archive Copy *END 21*

ENDORSEMENT# *21*   (Continued)

This endorsement, effective *12:01 am*   *October 1, 2014*   forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

"Document of Title" means a  bill of lading, dock warrant,  dock receipt, warehouse
receipt or order for the delivery of goods, and also any other document which in the
regular course of business or financing  is treated as adequately evidencing that  the
person in possession of  it is entitled to  receive, hold and  dispose of the document
and the goods it covers  and must purport to  be issued by or  addressed to a bailee
and purport to cover goods  in the bailee's possession which  are either identified or
are fungible portions of an identified mass.

"Evidence of Debt" means  an instrument, including a  Negotiable Instrument,
executed by a  customer of  yours and held  by you  which in the  regular course  of
business is treated as evidencing the customer's debt to you.

"Guarantee" means a  written undertaking obligating  the signer to  pay the  debt of
another to the  Insured or  its assignee  or to a  financial institution  from which  the
Insured has purchased participation in the debt, if the debt is not paid in accordance
with its terms.

"Instruction" means  a written order  to the issuer of an  Uncertified Security
requesting that  the transfer,  pledge, or  release from  pledge of  the Uncertificated
Security specified be registered.

"Letter of Credit" means an engagement in writing by  a bank or other person made
at the request of a customer that the bank or other person will honor drafts or other
demands for payment upon compliance with the conditions specified in the Letter of
Credit.

"Loan" means all extensions of credit by the  Insured and all transactions creating a
creditor relationship in  favor of  you and all  transactions by  which you assume  an
existing creditor relationship.

"Negotiable Instrument" means any writing:
   (1)   signed by the maker or drawer; and
   (2)   containing any unconditional promise or order to  pay a sum certain in
          Money and no other promise,  order, obligation or power given  by the
          maker or drawer; and

ENDORSEMENT# *21*   **(Continued)**

This endorsement, effective  *12:01 am*   *October 1, 2014*   forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

    (3)     is payable on demand or at a definite time; and
    (4)     is payable to order or bearer.

"Security Agreement" means  an agreement  which creates  an interest  in personal
property or fixtures and which secures payment or performance of an obligation.

"Statement of Uncertificated Security" means  a written statement of  the issuer of
an Uncertificated Security containing:
    (1)     a description  of the  issue of  which the  Uncertificated Security  is a
           part;
    (2)     the number of shares or units:
           (a) transferred to the registered owner;
           (b) pledged by the registered owner to the registered pledgee;
           (c) released from pledge by the registered pledgee;
           (d) registered in the name  of the registered owner on  the date of the
               statement; or

           (e) subject to pledge on the date of the statement;
    (3)     the name and address of the registered owner and registered pledgee;
    (4)     a notion of  any liens  and restrictions of the  issuer and any  adverse
           claims which  the Uncertificated  Security is  or may  be  subject or  a
           statement that there  are none of  those liens,  restrictions or adverse
           claims; and
    (5)     the date of the following:
           (a) the transfer of the  shares or units to the new  registered owner of
               the shares or units was registers;
           (b) the pledge of the registered pledgee was registered; or
           (c) of the statement, if it is a periodic or annual statement

"Uncertificated Security" means a  share, participation or  other interest in  property
of, or an enterprise of, the issuer or an obligation of the issuer, which is:
    (1) not represented by an instrument  and the transfer of  which is registered
       upon books maintained for that purpose by or on behalf of the issuer;

*BRANCH*  *Archive Copy*  *END 21*

ENDORSEMENT# *21*   (Continued)

This endorsement, effective *12:01 am*     *October 1, 2014*          forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

 

 

(2)    of a type commonly dealt in on securities exchanges or markets; and
(3)    either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations.

"Withdrawal Order" means a non-Negotiable Instrument, other than an Instruction, signed by a customer of the Insured authorizing the Insured to debit the customer's account in the amount in the of funds stated therein.

3.    Section D. Exclusions, of this Policy is amended to include the following exclusions with respect to **A.9.Securities Coverage**:

SC-1    loss resulting directly or indirectly from the complete or partial non-payment of, or default upon, any Loan or transaction involving the Insured as a lender or borrower, or extension of credit, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes agreements or Evidences of Debt, whether such Loan, transaction or extension was procured in good faith or through trick, artifice, fraud or false pretense;

SC-2    loss resulting from any violation by the Insured or by any Employee:

of law regulating (i) the issuance, purchase or sale of Securities, (ii) Securities transactions upon security exchanges or over the counter market, (iii) investment companies, or (iv) investment advisers, or exchanges or
(2) of any rule or regulation made pursuant to any such law,

unless it is established by the Insured that the act or acts which caused the said loss involved fraudulent or dishonest conduct which would have caused a loss to the Insured in a similar amount in the absence of such laws, rules or regulations;

SC - 3    loss resulting directly from the failure of a financial or depository institution, or its receiver or liquidator, to pay or deliver, on demand of the Insured, funds or property of the Insured held by it in any capacity; and

ENDORSEMENT# *21*   (Continued)

This endorsement, effective *12:01 am*   *October 1, 2014*   forms a part of
policy number *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

SC - 4   loss involving any Uncertificated Security except an Uncertificated Security of any Federal Reserve Bank of The United States.

4.   It is further agreed that with respect to the coverage afforded pursuant to this endorsement, with respect to **A.9. Securities Coverage**, the most we will pay under this policy for loss is the Limit of Insurance shown in the below SCHEDULE and such loss shall also be subject to the applicable Deductible Amount shown in the SCHEDULE below:

SCHEDULE

| INSURING AGREEMENT | LIMIT OF INSURANCE | DEDUCTIBLE AMOUNT |
|---|---|---|
| A.9. Securities Coverage | $25,000,000 | $10,000,000 |

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Bond or Policy, other than as above stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT   **BRANCH**   **END 21**
**Archive Copy**

ENDORSEMENT# *22*

**CRIME AND FIDELITY**
**CR 04 01 05 06**

This endorsement, effective *12:01 am*     *October 1, 2014*     forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**CLIENTS' PROPERTY**

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE FORM
COMMERCIAL CRIME POLICY
EMPLOYEE THEFT AND FORGERY POLICY

**PROVISIONS**

With regard to this Clients' Property Endorsement, the provisions of the coverage form or policy to which this endorsement is attached apply, unless modified by this endorsement.

**A.** The following insuring agreement is added to Section **A. Insuring Agreements:**

We will pay for loss of or damage to "money", "securities" and "other property" sustained by your "client" resulting directly from "theft" committed by an identified "employee", acting alone or in collusion with other persons.

**B.** Under Section **D. Exclusions** in the Commercial Crime Coverage Form and Commercial Crime Policy, the Acts of Employees, Managers, Directors, Trustees or Representatives Exclusion does not apply to this Insuring Agreement.

**C.** Under Section **E. Conditions:**

**1.** Paragraph **(1)** of the **Duties in the Event of Loss** Condition is replaced by the following:

Notify us as soon as possible.

**2.** The **Ownership of Property; Interests Covered** Condition is replaced by the following:

The property covered under this Insuring Agreement is limited to property:

**a.** That your "client" owns or leases; or

**b.** That your "client" holds for others whether or not your "client" is legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization, including your "client". Any claim for loss that is covered under this Insuring Agreement must be presented by you.

**D.** Under Section **F. Definitions:**

**1.** The following definitions are added:

**a.** "Client" means any entity for whom you perform services under a written contract.

**b.** "Occurrence" means:

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee", acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

**2.** The definition of "theft" is replaced by the following:

"Theft" means the unlawful taking of property to the deprivation of your "client".

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 022*

CR 04 01 05 06   *BRANCH*   *Archive Copy* © ISO Properties, Inc., 2005|                                    Page 1 of 1

ENDORSEMENT# 23

This endorsement, effective *12:01 am*     *October 1, 2014*      forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**TERMINATION TO ANY EMPLOYEE**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

**PROVISIONS:**

1.  Section E. Conditions, Clause 2. Conditions  Applicable to Insuring Agreement A.1.,
    paragraph a. Termination As To Any Employee is deleted in its entirety and replaced
    by the following:

    **a. Termination As To Any Employee**
    This Insuring  Agreement  terminates  as to any "employee"  immediately  upon
    discovery  by <u>The Minneapolis Insurance Department</u>,  of any fraudulent  or
    dishonest act on the part of such Employee; or (b)  at 12:01 A.M. standard  time
    as aforesaid, upon  the  effective date specified  in a written  notice mailed to the
    Insured.  Such date shall be not less than 90 days after  the date of mailing.  The
    mailing by  the Company  of  notice as  aforesaid  to the  Insured  at the  address
    shown in this Policy shall  be sufficient proof of notice.   Delivery of such  written
    notice by the Company shall be equivalent to mailing.

2.  Nothing herein contained  shall be  held to  vary, alter,  waive or  extend any of  the
    terms, limitations,  conditions  or provisions  of  the  attached Policy  other  than  as
    above stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT      *BRANCH*          *END 23*
            *Archive Copy*

## ENDORSEMENT# *24*

This endorsement, effective *12:01 am      October 1, 2014*          forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CANCELLATION AMENDATORY
### (RETURN PRO RATA)

Wherever used herein: (1) "Policy" means the policy or bond to which this endorsement or rider is made part of; (2) "Insurer" means the "Insurer," "Underwriter," "Company" or other name specifically ascribed in this Policy as the insurance company or underwriter for this Policy; (3) "Named Entity" means the "Named Entity," "Named Corporation," Named Organization," "Named Sponsor," "Named Insured," "First Named Insured," "Insured's Representative," "Policyholder" or equivalent term stated in Item 1 of the Declarations; and (4) "Period" means the "Policy Period," "Bond Period" or equivalent term stated in the Declarations.

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding anything to the contrary in any CANCELLATION or TERMINATION clause of this Policy (and any endorsement or rider amending such cancellation or termination clause, including but not limited to any state cancellation/non-renewal amendatory attached to this policy), if this Policy shall be canceled by the Named Entity, the Insurer shall return to the Named Entity the unearned pro rata proportion of the premium as of the effective date of cancellation.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

*END 024*
Page 1 of 1

101036 (4/09)
*BRANCH*
*Archive Copy*

**ENDORSEMENT# 25**

This endorsement, effective *12:01 am    October 1, 2014*    forms a part of
policy number *01-613-57-14*
issued to *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**FRISC OPTIONAL** -
**(WITH CLAIMS EXPENSE COVERAGE IF OPT OUT)**

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME POLICY

It is agreed that:

1. Condition E.1.g "**Duties in the Event of Loss**" is deleted in its entirety and replaced with the following:

    g. **Duties in the Event of Loss**

    After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

    · give notarized written notice to us of loss or damage, and of your election to apply either Loss Settlement Clause 1 or Loss Settlement Clause 2, as set forth below, to such loss or damage, no later than 90 days after knowledge or discovery;

    · give notice to the police if loss results from dissolution; and

    · provide all requested information and documents and cooperate with us in all matters pertaining to loss.

    This policy shall apply pursuant to the election of either Loss Settlement Clause 1 or Loss Settlement Clause 2 set forth in the written notice given by the first Named Insured shown in the Declarations. If the first Named Insured fails to make such election, this policy shall apply as if the first Named Insured had elected to apply Loss Settlement Clause 2 to such loss.

    1) LOSS SETTLEMENT CLAUSE 1: Election of the Fidelity Research & Investigative Settlement Clause (FRISC)

*BRANCH* Archive Copy *END 25*

**ENDORSEMENT#** *25*   **(Continued)**

This endorsement, effective  *12:01 am*   *October 1, 2014*   forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

An independent Investigative Specialist will investigate the facts and determine the quantum of loss. The first Named Insured and we shall jointly task and budget the Investigative Specialist regarding the scope and cost of the investigation to be performed. The report issued by the Investigative Specialist will be definitive as respects the facts and the quantum of loss and shall be provided to both you and us.

After a joint review of the investigative report, if the first Named Insured and we cannot agree upon the settlement of loss, we, at the first Named Insured's request, will submit the dispute to mediation and/or arbitration (if applicable). The rules of the American Arbitration Association shall apply to this proceeding except for the selection of the mediator and/or arbitrator.

Upon receipt and acceptance of written notification by us, the first Named Insured shall choose an Investigative Specialist and a Mediator and/or Arbitrator from the attached endorsement, provided the choice does not present a clear conflict of interest. We and the first Named Insured will share equally the cost of the Investigative Specialist. The Deductible Amount is not applicable to the cost of the Investigative Specialist and the expense paid by us will be a part of, and not in addition to, the limit of liability.

We may amend the listing of Investigative Specialists, Mediators and/or Arbitrators. However, no changes shall be made to the listing attached to this policy during the policy period, unless the amendments are at the first Named Insured's request.

2) LOSS SETTLEMENT CLAUSE 2: Waiver of FRISC

(a) You shall be required to meet the following conditions in presenting loss or damage to us: (i) you shall have given notarized written to us no later than 90 days after knowledge or discovery of the loss; ii) you shall have given notice to the police if the loss results from dissolution; (iii) you shall file a detailed proof of loss, duly sworn to, with us within 180 days after knowledge or discovery of the loss; and (iv) you shall provide all requested information and documents and cooperate with us in all matters pertaining to the loss.

*BRANCH* *Archive Copy* *END 25*

**ENDORSEMENT#** *25*  **(Continued)**

This endorsement, effective  *12:01 am*  *October 1, 2014*  forms a part of
policy number  *01-613-57-14*
issued to  *CARGILL INCORPORATED*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

Upon our request,  you shall submit  to examination by  us, subscribe the same,  under oath  if  required,  and produce for  our examination all pertinent records,  all at  such reasonable  times and places  as we  shall designate, and  shall cooperate  with us  in  all matters  pertaining to the loss or the claim.

(b) <u>Claims Expense</u>:  Coverage  under  the  attached policy  is  extended  to include reasonable expenses (excluding  the cost of services  rendered by your employees) incurred by  you for producing  and certifying particulars or details  of your  business  required by  us  in order  to  arrive at  a  loss payable under  this  policy ("Claims Expense  Coverage").  If  no  loss is established hereunder, then you will bear all such expenses.

The limit of liability  for all Claims  Expense Coverage provided  hereunder shall be  <u>$100,000</u>  and shall be part of  and not in addition  to the Limit of Insurance under the policy.   There shall be no  coverage hereunder for any expenses arising out of any  legal dispute, suit or arbitration  with us. The Claims Expense  Coverage afforded  hereunder shall  be subject  to a deductible of <u>$0</u>.

(c) No action shall lie against us unless, as a condition precedent thereto:   (i) you have complied with all the terms and conditions of this  policy; (ii) 90 days have elapsed after the date the required proof of loss was filed with us; and (iii) such action is commenced  within two years after knowledge or discovery of the loss.

If any limitation is  prohibited by any  law, the limitation  shall be deemed to be amended to comply with the minimum period of limitation permitted by law.

Any dispute between the you and us involving the amount or valuation of loss will not be submitted to mediation or arbitration for resolution.

Nothing herein contained  shall be  held to vary,  alter, waive  or extend  any of the  terms, limitations, conditions, or provisions of the attached Policy other than as above stated.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT  **BRANCH**  **END 25**
*Archive Copy*

<u>ENDORSEMENT# *26*</u>

This endorsement, effective *12:01 am    October 1, 2014*          forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TRADING EXCLUSION DELETED

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

**PROVISIONS:**

It is agreed that in Section D.  Exclusions, 2., the exclusion entitled " **Trading**" is deleted in
its entirety.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT       *BRANCH       END 26*
             *Archive Copy*

ENDORSEMENT# 27

This endorsement, effective  *12:01 am*      *October 1, 2014*        forms a part of

policy number  *01-613-57-14*

issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**NAMED INSURED AMENDED**
**(EMPLOYMENT BENEFIT PLAN)**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

1. The Item of the  DECLARATIONS entitled NAMED INSURED is  amended by addition of
   the following at the end thereof:

   "and any employee benefit plan sponsored by the Named Insured(s) now existing  or
   hereafter created  or  acquired  whether  or  not required  to  be  bonded  under  the
   Employee Retirement Income Security Act of 1974."

2. This amendment is subject  to Clause **E. Conditions, Consolidation - Merger or
   Acquisition**.

3. Nothing herein contained shall be held to vary, alter, waive or  extend any of the terms,
   limitations, conditions or agreements of the attached policy other than as above stated.


ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT     *BRANCH*          *END 27*
           *Archive Copy*

**ENDORSEMENT#** *28*

This endorsement, effective *12:01 am*     *October 1, 2014*     forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**STATE AMENDATORY INCONSISTENT**

In consideration of the premium charged, it is hereby understood and agreed as follows:

1.   In the event that there is an inconsistency between any: (a) state amendatory attached to this policy, or any other wording attached to this policy to comply with applicable law; and (b) any other term, condition or limitation of this policy; then, to the extent permitted by law, subject to the limitations below, the Insurer will resolve the inconsistency by applying the terms, conditions or limitations that are more favorable to the policyholder.

2.   This endorsement shall not apply to the extent that: (a) any state amendatory or other wording expressly limits coverage in order to comply with applicable law, or (b) any such amendatory or other compliance wording amends language applicable to premium. In such events, the state amendatory or other compliance wording will govern over any other term, condition or limitation of the policy.

3.   "Policyholder" means the first Named Entity, Named Organization, Named Corporation, Named Sponsor, Named Insured or other policyholder designated in Item 1 of the Declarations of this policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.
*END 028*

BRANCH Archive Copy

**ENDORSEMENT# 29**

This endorsement, effective *12:01 am    October 1, 2014*    forms a part of
policy number *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### ISO 700 COMMERCIAL CRIME POLICY (DISCOVERY FORM)
### RENEWAL TRANSITION ENDORSEMENT

In consideration of the premium charged, effective for 1 year from the date of 10/01/2014, it is hereby understood and agreed that the policy is amended as follows:

1.  *Liberalization Right*: If, in relation to loss sustained by you resulting directly from an occurrence taking place at any time which is "discovered" by you during the Policy Period, the Named Insured believes the terms and conditions of the Prior Policy provide coverage for loss that is not provided under the terms and conditions of this policy, the Named Insured may elect to have all or part of that loss adjusted according to the terms and conditions of the Prior Policy, except as provided in Clause 3 below. To do so, the Named Insured must notify us in writing of that election and the language of the Prior Policy that the Named Insured believes provides the coverage that is not provided under this policy for such loss.

2.  *Prior Policy*: " Prior Policy" means the immediate predecessor policy to this policy, but only if that predecessor policy was issued by us to the Named Insured.

3.  *Liberalization Exceptions*:

    (a)    No coverage shall be provided for any loss or other matter which was the subject of any notice given under the Prior Policy or any preceding policy;

    (b)    The liberalization features of this endorsement shall not apply to any of the following items:

        (1)    the Policy Period, Limit(s) of Liability or deductible amount(s);

        (2)    the Protected Information Exclusion endorsement; and

        (3)    the Indirect or Consequential Loss Exclusion endorsement.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT    *BRANCH        END 29*
*Archive Copy*

ENDORSEMENT# *30*

This endorsement, effective *12:01 am     October 1, 2014*     forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**INSURING AGREEMENT FORGERY OR ALTERATION AMENDED**
**(ADDING GAIN OR SCALE TICKETS)**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

**PROVISIONS:**

1. Section A. Insuring Agreements, 2.  Forgery Or Alteration, subparagraph a. is  amended
   by adding the following to the end thereof:

   It is further agreed that we will pay  for loss directly from "forgery" or alteration  of any
   gain ticket or scale ticket or similar instrument issued or purported  to have been issued
   by you and evidencing or purporting to evidence the receipt by or the deposit with you.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT        *BRANCH         END 30*
              *Archive Copy*

**ENDORSEMENT#** *31*

This endorsement, effective *12:01 am    October 1, 2014*                    forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| CRDS02 | 08/07 | COMMERCIAL CRIME POLICY DECLARATIONS |
| CR0022 | 05/06 | Commercial Crime Policy (Discovery Form) |
| CR0220 | 08/07 | MINNESOTA CHANGES |
| 99758 | 08/08 | NOTICE OF CLAIM (REPORTING BY E-MAIL) |
| 113013 | 10/12 | PROTECTED INFORMATION EXCLUSION |
| 113024 | 10/12 | INDIRECT OR CONSEQUENTIAL LOSS EXCLUSION |
| 89644 | 06/13 | ECONOMIC SANCTIONS ENDORSEMENT |
| MNSCPT | | OMNIBUS NAMED INSURED AND JOINT VENTURE COVERAGE |
| MNSCPT | | DISCOVERY PERIOD AMENDED |
| CR2541 | 08/07 | INCLUDE DESIGNATED PERSONS OR CLASSES OF PERSONS AS EMPLOYEES |
| MNSCPT | | DEFINITION OF EMPLOYEE AMENDATORY ENDORSEMENT |
| MNSCPT | | ADD CREDIT CARD FORGERY |
| 95420 | 08/07 | CANCELLATION OF POLICY AMENDED |
| CR2022 | 08/07 | INCLUDE DESIGNATED PERSON REQUIRED TO HAVE KNOWLEDGE OF LOSS (DISCOVERY FORM) |
| 95442 | 08/07 | PRIOR THEFT OR DISHONESTY |
| MNSCPT | | NOTICE CONSOLIDATION-MERGER AMENDED |
| MNSCPT | | JOINT LOSS AGREEMENT |
| MNSCPT | | COVERAGE EXCLUSION |
| CR2009 | 08/07 | AMEND TERRITORIAL LIMITS |
| 95428 | 08/07 | EMPLOYEE POST TERMINATION COVERAGE |
| 86203 | 07/04 | TERRORISM EXCLUSION |
| CR2510 | 08/07 | INCLUDE VOLUNTEER WORKERS OTHER THAN FUND SOLICITORS AS EMPLOYEES |
| MNSCPT | | ADD SECURITIES COVERAGE |

© All rights reserved.

*END 031*

*Archive Copy*
*BRANCH*

78859 (10/01)                                                Page 1 of 2

**ENDORSEMENT#** *31*

This endorsement, effective *12:01 am*    *October 1, 2014*       forms a part of
policy number  *01-613-57-14*
issued to *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| CR0401 | 05/06 | CLIENTS' PROPERTY |
| MNSCPT | | TERMINATION TO ANY EMPLOYEE |
| 101036 | 04/09 | CANCELLATION AMENDATORY (RETURN PRO RATA) |
| MNSCPT | | FRISC OPTIONAL - |
| MNSCPT | | TRADING EXCLUSION DELETED |
| MNSCPT | | NAMED INSURED AMENDED |
| 94039 | 05/07 | STATE AMENDATORY INCONSISTENT |
| MNSCPT | | ISO 700 COMMERCIAL CRIME POLICY (DISCOVERY FORM) |
| MNSCPT | | INSURING AGREEMENT FORGERY OR ALTERATION AMENDED |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

AUTHORIZED REPRESENTATIVE

©

*Archive Copy*
**BRANCH**

**END 031**

**ENDORSEMENT#** *32*

This endorsement, effective  *12:01 am     October 1, 2014*      forms a part of
policy number  *01-613-57-14*
issued to    *CARGILL INCORPORATED*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**IMPERSONATION FRAUD COVERAGE**
**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY (DISCOVERY FORM)**
**COMMERCIALCRIME POLICY (LOSS SUSTAINED FORM)**
**GOVERNMENT CRIME POLICY (DISCOVERY FORM)**
**GOVERNMENT CRIME POLICY (LOSS SUSTAINED FORM)**

It is agreed that in consideration of the additional premium of $0, the policy is hereby amended as follows:

1.    Insuring Agreement "Funds Transfer Fraud" is amended by adding the following to the end thereof:

Impersonation Fraud Coverage

We will also pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account."

Notwithstanding the above requirement that the loss of "funds" result directly from a "fraudulent instruction," we will also pay for the loss of "funds" resulting from your receipt of a fraudulent phone call or email from a purported vendor, which advises you that the vendor's bank account information has been changed and you suffer a loss of "funds," because you issued a payment or payments to this fraudulent bank account, based upon your confirmation controls, you believed the fraudulent instruction to change the vendor's bank account information to be valid.

2.    Solely with respect to Impersonation Fraud Coverage provided by this endorsement, in Section F. Definitions, the definition of "Fraudulent Instruction" is deleted in its entirety and replaced with the following:

"Fraudulent instruction" means an electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction communicated by you or your "employee" based upon an instruction received and relied upon by you or your "employee" which was transmitted:

a.      by a purported director, officer, partner, member or sole proprietor of yours or by another "employee"or by an individual acting in collusion with such purported director, officer, partner, member, sole proprietor or other

M116956          **BRANCH**      *Archive Copy* **END 32**

ENDORSEMENT# *32*   **(Continued)**

This endorsement, effective *12:01 am*   *October 1, 2014*   forms a part of
policy number  *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

      b.      "employee"but which was in fact fraudulently transmitted by someone else without your or your "employee's" knowledge; or

      c.      by a purported director, officer, partner, member, sole proprietor or employee of your "vendor" or "client"or by an individual acting in collusion with such purported director, officer or employeebut which was in fact fraudulently transmitted by someone else without your or your "employee's" knowledge; provided, however, "fraudulent instruction" shall not include any such instruction transmitted by an actual director, officer, partner, member, sole proprietor or employee of your "vendor" or "client" who was acting in collusion with any third party in submitting such instruction.

3.     Solely for purposes of this endorsement, the following definitions are added:

    Vendor means any entity, firm, company, organization, association or individual which has a legitimate pre-existing arrangement or written agreement to provide goods or services to you.

    Client means an entity, firm, company, organization, association or individual to whom we provide goods or services for a fee pursuant to a written contract.

4.     Our total liability for coverage provided by this endorsement for all loss arising from a single act or series of related acts is $ 100,000 ("Impersonation Fraud Limit"). All amounts paid by us pursuant to this endorsement will be part of, and not in addition to, the applicable Limit of Insurance shown in the Declarations.

5.     Solely with respect to coverage provided by this endorsement, the applicable per occurrence Deductible Amount is $ 25,000.

6.     Solely for purposes of this endorsement, the following exclusion shall apply:

    The coverage afforded by this endorsement does not apply to any loss occurring prior to 10/01/2014

7.     The most we will pay for all loss resulting directly from an "occurrence" under this endorsement is the Impersonation Fraud Limit shown in Section 4 above.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

M116956     **BRANCH**     **END 32**
*Archive Copy*

<u>ENDORSEMENT#</u> *33*

This endorsement, effective *12:01 am*   *October 1, 2015*   forms a part of
policy number *01-613-57-14*
issued to   *CARGILL INCORPORATED*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**POLICY PERIOD AMENDED**

In consideration of the additional premium charged of $133,440, this endorsement
modifies insurance provided under the following:

**COMMERCIAL CRIME POLICY**

1. Effective 10/01/2015, the section entitled "Policy Period" in the Declarations is deleted
in its entirety and replaced with the following:

**Policy Period**

**From: 10/01/2014**

**To:   06/15/2016**   12:01 A.M., at your mailing address shown above

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

© All rights reserved.

MNSCPT   *BRANCH*   *END 33*
*Archive Copy*

**ENDORSEMENT#** *34*

This endorsement, effective *12:01 am*      *October 1, 2015*                 forms a part of
policy number   *01-613-57-14*
issued to *CARGILL INCORPORATED*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX (AMENDED)

In consideration of the premium charged, it is hereby understood and agreed that the "Forms Index"
Endorsement is amended to include the following:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| M116956 | | IMPERSONATION FRAUD COVERAGE |
| MNSCPT | | POLICY PERIOD AMENDED |
| SYSLIB | 01/05 | FORMS INDEX (AMENDED) |

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*Archive Copy*      **END 034**
**BRANCH**